MARY R. MOSS, APPELLANT, V. CITY OF FAIRBURY ET AL.,
APPELLEES.

FILED DECEMBER 3, 1902.    No. 12,249.

Commissioner's opinion, Department No. 3.

1. **Sidewalks:** IMPROVEMENTS: CONTRACT: STATUTE.  The provisions of
section 20, article 1, chapter 14, Compiled Statutes, in regard
to the making of an estimate of the cost of a proposed improve-
ment, have reference to contracts for laying sidewalks in
pursuance of the provisions of section 69, of the same article.

2. ——: ——: ——: ——: JURISDICTION: SPECIAL ASSESSMENT.
The provisions in regard to such estimates are jurisdictional,
and the cost of a sidewalk, laid without a compliance there-
with, can not be made the basis of the levy of a special
assessment against the adjacent property.

APPEAL from the district court for Jefferson county.
Injunction to prevent the levy of a special tax.  Heard
below before BAKER, J.  *Reversed.*

*W. H. Barnes* and *W. J. Moss,* for appellant.

*Robert A. Clapp* and *John C. Hartigan, contra.*

ALBERT, C.

A third party, acting under a general contract with the
defendant city, constructed a sidewalk in front of certain
property of the plaintiff in said city.  After the completion
of the work he filed his bill for the labor and material
furnished in that behalf, which was allowed and paid by
the city.  Afterward, the defendants undertook to levy a
special assessment against the plaintiff's property front-
ing on such improvement.  Before the levy was made the
plaintiff brought this action, and obtained a temporary
order restraining the defendants from making the proposed
levy.  On a final hearing, the court found for the defend-
ants, and entered a decree accordingly.  The plaintiff is
here on appeal.

It is conceded that the city engineer never made, nor

submitted to the city council, any estimate of the cost of the sidewalk before the same was laid, or at any other time. The plaintiff contends that such omission is fatal to the proposed levy.

The court will take judicial notice that the city of Fairbury is a city of the second class, having less than 5,000 inhabitants. Section 20, article 1, chapter 14, Compiled Statutes, 1901,* applicable to cities of that class, so far as concerns us now, is as follows: "Before the city council shall make any contract for building bridges or sidewalks, or for any work on the streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate; and in advertising for bids for any such work the council shall cause the amount of such estimate to be published therewith." Section 69† provides, among other things, that in addition to the powers before granted by the provisions of said chapter, each city and village may enact ordinances or by-laws for certain purposes; among the purposes enumerated are those contained in subdivisions III to VI, which are as follows:

"III. To provide for the grading and repairs of any street, avenue, or alley, and the construction of bridges, culverts, and sewers, and shall defray expenses of the same out of the general funds of such city or village, not exceeding two mills of the levy for general purposes, but no street shall be graded except the same be ordered to be done by the affirmative vote of two-thirds of the city council or trustees.

"IV. To construct sidewalks, to curb, pave, gravel, macadamize and gutter any highway or alley therein, and to levy a special tax on the lots and parcels of land fronting on such highway or alley, to pay the expenses of such improvement. *    *    *

* Cobbey's Annotated Statutes, sec. 8619.

† Cobbey's Annotated Statutes, sec. 8711.

"V. To repair sidewalks, and to assess the expense thereof on the property in front of, which such repairs are made.

"VI. To provide for the laying of temporary plank sidewalks, upon the natural surface of the ground, without regard to grade, on streets not permanently improved, at a cost not exceeding fifty cents a lineal foot, and to provide for the assessment of the cost thereof on the property in front of which the same shall be levied."

Subdivision VII of the same section prescribes the manner in which assessments for such improvements shall be made.

The defendants insist that there is no relation between sections 20 and 69, *supra*, but that by section 69 the legislature intended, as stated in that section, to grant additional powers to cities and villages, to be exercised by ordinance.    These sections, so far as they relate to the present inquiry, were originally enacted as part of a general act entitled "An act to provide for the organization, government, and powers of cities and villages."   Session Laws, 1879, p. 193..  Section 69 is the only express grant of power covering the subjects enumerated in the subdivisions of section 69, hereinbefore set out.   In the absence of such express grant, doubtless the authority to provide for the improvements mentioned in those subdivisions would have been implied.   But the legislature having made such power the subject of an express grant, there exists no implied power, save such as may be implied from the language of the express grant.   Section 20, if it has reference to anything, must have reference to the exercise of some power granted by the legislature; as we have seen, such power does not rest in implication, but is conferred by the express provisions of section 69..   That being true, the conclusion is irresistible that the provisions of section 20 were intended as a limitation on section 69 of the same act.

The defendants contend that, as section 69 applies to both cities and villages, section 20, which provides for an

49

estimate by the city engineer, can have no reference to
the former section, because villages have no engineer.
The argument proves too much, because, pushed to its
logical conclusion, there would be nothing to which section
20 could apply, as the entire act relates to villages as well
as to cities.

The next question is whether the estimate provided for
in section 20 is jurisdictional. We think it is. Being a
part of the same act as section 69, it should be given pre-
cisely the same effect as though embraced within the lat-
ter section. The city derives its powers from the statute,
which expressly limits the manner of the exercise of such
powers. Section 20 limits the cost of the improvements
therein mentioned to the estimate of the engineer. As the
cost of such improvements is the basis of the special as-
sessment, in the absence of such estimate, there can be no
legal basis for the levy of such assessment. *Fulton v. City
of Lincoln,* 9 Nebr., 358, and *Coggeshall v. City of Des
Moines,** 41 N. W. Rep. [Ia.], 617, support this postion.

The defendants rely on *Nebraska City v. Nebraska
City Hydraulic Gas Light and Coke Co.,* 9 Nebr., 339.
That case does not support their contention. It was
brought to recover for gas furnished the city. The
city invoked the provisions of section 32, chapter 9, Gen-
eral Statutes, then in force, which is identical with that
part of section 20 hereinbefore set out. This court held
that contract was not within the limitations of the section
relied on. From a reading of the section it is clear that
no other conclusion could have been reached, because the
section, as stated in the opinion in that case, has reference
only to contracts respecting streets, bridges or other
work or improvement to be made for and owned by
the city.

If we understand the defendants' argument, based on the
case just cited, it rests on the assumption that sidewalks
like those in question are not made for and owned by the
city. The assumption is unfounded, even though as in

* 78 Ia., 235.

this case, there was an ordinance giving the owners of property the right to construct sidewalks in front of their property. The city might have enacted such ordinance or not as it saw fit. Whatever be the rights of a property owner under such ordinance, so far as concerns the payment of the expense of such sidewalks, and the levy of a special tax therefor, the statute contemplates sidewalks laid by the city and paid for by it. Strictly speaking, the cost of laying such sidewalks is not, and can not be, taxed against the adjacent property; it is merely the basis for the levy of a special tax against the property; and such tax, when collected, belongs to the city. That the cost of the improvement may be paid from such tax makes such payment none the less a payment by the city, nor the improvement any the less an improvement "made for and owned by the city."

The adoption of the foregoing view will not, as the defendants contend, compel a city to have an estimate made whenever it becomes necessary to replace a brick or board in a sidewalk. Section 20 has no reference to the repair of sidewalks; other sections of the chapter make ample provisions for such work.

It is urged that the plaintiff is estopped to resist the levy, because she permitted the work to be done. It is true she permitted it to be done, but it was done over her repeated protests, which were made to different members of the governing body of the city, and to the party doing the work, and after she had informed them that she would resist the collection of the expense of such improvement. The city is chargeable with notice of such matters, and can not now be heard to complain that she did not adopt more heroic measures to prevent its unlawful expenditure of the public funds.

Other questions are discussed, but those we have considered are sufficient to dispose of the case.

It is therefore recommended that the decree of the district court be reversed, and the cause remanded with directions to enter a decree in favor of the plaintiff, enjoin-

ing and restraining the defendants from making the proposed levy.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed, and the cause remanded with directions to enter a decree in favor of the plaintiff, enjoining and restraining the defendants from making the proposed levy.

REVERSED AND REMANDED.

4. **Marriage:** CONSENT: COHABITATION. In this state the only essential of a valid marriage is the free consent of competent parties to live together in the marriage relation.

5. ———: REMOVAL OF IMPEDIMENT: CONTINUOUS COHABITATION. Where a marriage contracted in good faith is void by reason of some removable impediment, the parties may, after the impediment has been removed, become lawfully united by con-

* Cobbey's Annotated Statutes, sec. 5369.