J. K. DEMING, Appellant, v. BOARD OF SUPERVISORS OF WORTH COUNTY et al., Appellees; GUST REYERSON et al., Interveners.

No. 46766.

12

December 11, 1945.

Carl H. Lambach and Floyd B. Ensign, both of Davenport, for appellant.

Orin J. Wardwell, of Northwood, for appellees.

Meighen, Knudson & Sturtz, of Albert Lea, Minnesota, for interveners.

Mulroney, J.—Plaintiff is the owner of drainage bonds in the principal amount of $6,000 on District No. 46 in Worth County, Iowa. The bonds have been in default since their maturity on May 1, 1936. On January 6, 1939, plaintiff commenced this action in mandamus against the Board of Supervisors of Worth County, alleging that the drainage taxes which were anticipated by the issuance of the bonds and pledged to the payment of the bonds were not all applied in payment of such bonds. The petition alleged that, "by reason of withdrawals by warrant or otherwise from funds pledged to the payment of the outstanding bonds there has been a total of $1,689.60 appropriated for the use and benefit of the District and to the loss of the bond fund.* * * ."

The prayer was for a writ commanding the board to levy an additional assessment to restore to the bond fund the amount

thus diverted. The board denied the foregoing allegations of the petition and pleaded the defense of the statute of limitations. Thirty-eight landowners in the district, whose land would be affected by an additional assessment, intervened in the action and filed an answer containing a similar denial and plea of the statute of limitations, and in addition thereto allegations to the effect that plaintiff's bonds were illegal and void because based in part upon assessments for private drains, and allegations that plaintiff is barred and estopped from maintaining the suit by reason of the decree in a former, action wherein the Board of Supervisors was enjoined from making any additional assessment in this district to pay outstanding bonds. The evidence was almost entirely the subject of stipulation wherein the parties preserved objections and it showed, in part, subject to plaintiff's objection of immateriality and irrelevancy, that the bonds, when first issued, were sold to George M. Bechtel & Company, who paid the board the total sum of par plus accrued interest but received back $1,826.88 as a fiscal agent's fee. The record shows that the fee was included in the George M. Bechtel & Company bid on the bonds and the warrant to George M. Bechtel & Company for $1,826.88 was issued a few days after the bonds were delivered.

The trial court held:

''* * * that the bonds sold by said drainage district with which to procure funds to pay for the work involved therein were purchased by George M. Bechtel & Company: That, as part of their bid in the purchase of said bonds said company included a 'fiscal agent's fee' in the sum of $1,826.88 for which warrant No. 398 was issued to said company on March 27, 1922, and such warrant was paid from the funds derived from the sale of said bonds; that the statutes of Iowa required said bonds to be sold for not less than par with accrued interest, and that the proceeds from the sale of such bonds should be applied upon said work; That the payment of said fiscal agent's fee resulted in the bonds being sold for less than par and accrued interest and said sum so paid was not used in the prosecution of such work; and such payment of said fee was illegal and wholly unauthorized by law; That the alleged deficiency asked in this suit by plaintiff is the sum of $1,689.60,

which is a less amount than said fiscal agent's fee; That said fee of $1,826.88 would be more than sufficient to create the alleged shortage of $1,689.60 and, such shortage being thus caused by said illegal payment, no assessment should be levied upon the property holders to make up such deficiency.''

. With respect to the trial court's decree the plaintiff asserts, first, that it amounts to the allowance of a set-off to plaintiff's claim and no set-off was pleaded in the answers filed by the defendant and interveners, and second, the drainage bonds are negotiable and hence not subject to the defense of set-off in the hands of plaintiff, a bona fide purchaser.

I. We need not set forth an extensive analysis of the audit of the receipts and expenditures that was in evidence in the suit. The treasurer did not undertake to segregate the funds of the district into accounts for construction and accounts of assessment collection pledged to the payment of bonds. All funds from whatever source were credited to the drainage fund and warrants, bonds, and interest coupons were paid out of this account. It is not seriously disputed that the total of the expenditures on behalf of the district exceeded the funds available to the district in the sum of $1,689.60 and it is clear that this figure is arrived at by including the warrant to George M. Bechtel & Company in the sum of $1,826.88. All that plaintiff seeks in this action is a restoration to the bond fund of the money which the board used for purposes beneficial to the district. Of course, this means that plaintiff seeks an additional assessment because of the insufficiency of the original assessment upon the theory that the original assessment was insufficient to pay for the original cost of the improvement. The fact that the improvements were all paid for would not mean there was no insufficiency if the bond fund was invaded to make some of the payments. Whitfield v. Sears, 233 Iowa 887, 10 N. W. 2d 564.

II. Section 7479, Code of 1939, provides for ''an additional assessment and levy'' if the first assessment made by the board for the original cost of the improvement is insufficient. Section 7509 also provides for a deficiency levy, ''if any levy of assessments is not sufficient to meet the interest

and principal of outstanding bonds * * * ." In Whitfield v. Sears, 233 Iowa 887, 893, 10 N. W. 2d 564, 568, we stated:

"An insufficiency of funds to pay bonds arises if the amount of the original levy or levies (under sections 7477 and 7479) is insufficient to pay the cost of the improvement and if the proceeds of the deferred assessment are consequently used, in part, to make up the deficiency. In that event a relevy is proper. It really makes no difference whether we say it is under section 7479 or 7509. The relevy is to make good an *original insufficiency* of levy."

The briefs filed by all parties contain excellent arguments on propositions touching the right of set-off, the necessity for pleading set-off, the negotiability of the bonds, and several other propositions which we fail to see have any relevancy to the issue.

Plaintiff's right of action is based on the statutes. Whether he is the holder of a negotiable or nonnegotiable bond is immaterial. All parties agree it is payable only from funds obtained by an original assessment or proper reassessment against the landowners in the district. He must prove an insufficiency of assessment to cover the cost of the improvement before he can compel a reassessment against the landowners in the district. It may be noted that we have held the cost of improvement for reassessment purposes may include some items which are technically maintenance items. See Whitfield v. Sears, supra, 233 Iowa 887, 10 N. W. 2d 564. Mere proof of a shortage of funds to pay outstanding bonds is not enough to establish an "insufficiency" upon which to base a right to have the property of the landowners in the district again assessed. Western Bohemian Frat. Assn. v. Barrett, 223 Iowa 932, 274 N. W. 55. The plaintiff bondholder who seeks the reassessment must prove that the landowners who have paid their original assessments have not actually paid their proportionate share of the cost of the improvement before he can have their lands again assessed. We have held that a shortage of funds to pay bonds caused by a failure to collect the assessment from some landowner in the district is not such an insufficiency of assessment as will entitle a bondholder

to obtain a reassessment. Hartz v. Truckenmiller, 228 Iowa 819, 293 N. W. 568. Nor is a shortage caused by an improper diversion of the funds of the district an insufficiency of assessment such as will entitle a bondholder to obtain a reassessment. Western Bohemian Frat. Assn. v. Barrett, supra, 223 Iowa 932, 274 N. W. 55; Whitfield v. Sears, supra, 233 Iowa 887, 892, 10 N. W. 2d 564, 567. In the last-cited case, Justice Smith, speaking for the court, said:

"Was there an inherent insufficiency in the assessments as they were set up? Or is the shortage due to subsequent diversions of funds to other purposes, or failure to collect all assessments levied? In one case a reassessment should be made, in the other the resultant loss must fall upon the bondholders. * * * Landowners who have paid their proportion of the cost of the improvement cannot be required to make good the default of other landowners or a deficiency caused by the erroneous use of the funds collected. The respective interests of landowner and bondholder are, of course, conflicting. It is the concern of the law to make sure that the proper balance is maintained between them."

What was the cause of the shortage under the record in this case? Plaintiff, in his argument filed in this court, states:

"It is not denied but that the assessments as spread were on paper sufficient to pay the bonds. We have no quarrel with the District in respect to that and under the holding of Hartz v. Truckenmiller to the extent that the paper assessment failed of collection we fully realize we are without remedy and thousands of dollars so failing of collection represent an irretrievable loss."

But plaintiff argues that the total expenditures from the drainage funds, including all payments beneficial to the district, exceeded the total assessment by the amount of the shortage, or $1,689.60, and funds, collected by assessments and pledged to the payment of the bonds, were used for purposes beneficial to the district to the extent of $1,689.60. We recognize this as an argument that the total assessment

was insufficient to pay for the improvement by the amount of $1,689.60 sufficient to warrant the reassessment, but the burden was on the plaintiff to establish that the reassessment he seeks is to pay for additional costs of the improvement. This means that the audit showing the expenditures will be scrutinized to see if they are all properly for cost of the improvement. If they are, plaintiff is entitled to the reassessment. To the extent that expenditures made were not properly for cost of the improvement the reassessment should be denied. In this connection it is well to state that all expenditures will be examined. Plaintiff points to the last expenditures, which resulted in the overdraft, and presents an argument that they were all properly chargeable to cost of the improvement. Without enumerating these expenditures, which are largely for attorneys' fees for services in litigation involving the district, we are inclined to agree, but, inherent in plaintiff's burden to establish that the shortage results from an additional cost of the improvement over the assessment lies the burden of showing all expenditures were properly made for cost of the improvement.

The intervening landowners point to the expenditure of $1,826.88 to George M. Bechtel & Company as a fiscal agent's fee and argue that this was not properly chargeable to cost of improvement; that it was an illegal payment; and, since it is greater than the amount of the deficit, the plaintiff is not entitled to any reassessment. The trial court upheld the interveners and denied the writ of mandamus prayed for by plaintiff. In this conclusion we agree.

The record with respect to the payment of $1,826.88 to George M. Bechtel & Company is clear. It was the apportioned amount paid by the board under a contract whereby George M. Bechtel & Company were to act as fiscal agents for the board in the sale of $200,000 worth of drainage bonds in five districts, including District No. 46, for the total sum of $5,191. Under the terms of the contract Bechtel & Company was to render certain services, including the furnishing of blank bonds and an attorney's opinion. The bonds were delivered and paid for at par and accrued interest on March

22, 1922. Five days later the warrant to George M. Bechtel & Company was issued in the sum of $1,826.88.

This payment to Bechtel & Company was illegal. The statute under which this issue of bonds was sold provided the board could ''devote the same [bonds] at par, with accrued interest, to the payment of the work as it progresses or may sell the same [bonds] at not less than par, with accrued interest, and devote the proceeds to such payment * * * .'' Section 1989-a27, 1913 Supplement to the Code of Iowa.

We said in Haferman v. Joint Drainage Dist., 204 Iowa 936, 940, 216 N. W. 257, 258:

''All taxpayers are entitled to enjoy the proceeds of said sale to the extent of 'par with accrued interest.' Deducting charges of a 'fiscal agent' would reduce the net result below 'par,' and the weight of this loss would ultimately be borne proportionately by all taxpayers throughout the entire district, not because of a permissive pledge of the 'joint boards,' but through the action of one of them, over which the others have no domination in the certain instance. Hence, 'such bonds' would not be 'applied at par with accrued interest' to the payment of the 'work.' ''

Plaintiff cites no authorities holding otherwise than above but argues that the foregoing is dictum, and perhaps it is. The case involved a joint drainage district of three counties. Two counties sold bonds and one issued improvement certificates. The counties selling bonds each paid a fiscal agent's fee. A resident of the county that issued certificates objected to the reassessment in that it included the items paid by the counties for fiscal agent's fees. We held the objection was valid on the ground that jurisdiction of the joint board ceases after the apportionment of the assessment and each county functions as a unit in collecting the assessments and cannot burden the entire district for such a fiscal agent's fee paid in connection with the sale of its own bonds.

Nevertheless, the statement to the effect that a sale of bonds with a ''deduction'' for a fiscal agent's fee is not a sale at par is sound law. And the same is true of a sale of bonds with an agreement to pay the buyer such a fiscal agent's fee.

In Lucas v. City of Nampa, 41 Idaho 35, 46, 238 P. 288, 291, such a fiscal agent's fee was paid by a city council in connection with the sale of sewer-construction bonds. In a suit to restrain the collection of assessments, the court stated:

"There was no authority in law for paying a commission for the sale of these bonds. C.S., section 4143, expressly prohibits such a municipal corporation from selling its bonds for less than their par value, net, and also prohibits the issuance of bonds in excess of the contract price and expense of such work."

In City of Bay City v. Lumbermen's State Bk., 193 Mich. 533, 541, 160 N. W. 425, 428, a similar fee was paid to the defendant bank that purchased the bonds and the court held the city could recover the fee in a suit against the bank, stating:

"The money paid to the bank amounted in substance and effect to a discount in violation of law, which required the bonds to be sold at par. Village of Ft. Edward v. Fish, 156 N. Y. 363 (50 N. E. 973); Appeal of Whelen, 108 Pa. 162 (1 Atl. 88)."

It is our conclusion that the payment of the fiscal agent's fee was illegal and not for the cost of the improvement, and the shortage is therefore caused by the illegal diversion of funds. This being true, there can be no reassessment and the trial court was right in so holding.—Affirmed.

MILLER, C. J., and GARFIELD, HALE, BLISS, WENNERSTRUM, OLIVER, and MANTZ, JJ., concur.

SMITH, J., takes no part.